UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BYRNE & STORM, P.C.,

                Plaintiff,                1:12-cv-716
                                                      (GLS/RFT)

        v.

ROY HANDEL et al.,

                Defendants.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Ganz, Wolkenbreit Law Firm<br>1 Columbia Circle<br>Albany, NY 12203 | CONOR E. BROWNELL, ESQ. |
| **FOR THE DEFENDANTS:** | |
| Office of Michael P. Delaney<br>465 New Karner Road<br>Albany, NY 12205 | MICHAEL P. DELANEY, ESQ. |

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

    Plaintiff Byrne & Storm, P.C. commenced this diversity action asserting claims of breach of contract and account stated against defendants Roy Handel (hereinafter "Handel") and Weldon House, Inc.

related to its legal representation of them. (*See* Compl., Dkt. No. 1.) Pending before the court is Byrne & Storm's motion for summary judgment on its claims and defendants' counterclaims, and defendants' cross motion for partial summary judgment, which seeks dismissal of Byrne & Storm's claims as against Handel. (*See* Dkt. Nos. 19, 26.) For the reasons that follow, Byrne & Storm's motion is granted as to defendants' counterclaim of legal malpractice and denied in all other respects with leave to renew, and defendants' cross motion is denied.

## II. Background

### A. Facts[1]

Byrne & Storm is a law firm with its only office located in Connecticut. (*See* Pl.'s Statement of Material Facts (SMF) ¶ 1, Dkt. No. 19, Attach. 8.)

---

[1] Unless otherwise noted, the facts are undisputed. The court also observes that defendants failed to specifically admit or deny each numbered paragraph contained in Byrne & Storm's Statement of Material Facts as required by N.D.N.Y. L.R. 7.1(a)(3). (*See* Defs.' Resp. to Pl.'s Statement of Material Facts (SMF), Dkt. No. 25.) As that rule directs, "[t]he [c]ourt shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." N.Y.N.D. L.R. 7.1(a)(3). Moreover, Byrne & Storm failed to file any response to defendants' Statement of Material Facts in support of their cross motion. (*See* Defs.' SMF, Dkt. No. 26, Attach. 2). Accordingly, the court deems admitted the properly supported facts asserted in both Statements of Material Facts.

On September 1, 2009, attorney James Byrne, of Byrne & Storm, sent to Handel a letter of engagement regarding "[t]he Weldon House [p]roperty." (Dkt. No. 1, Attach. 1; *see* Pl.'s SMF ¶ 2.) The engagement letter, which was later signed by Handel—who is not an officer or employee of Weldon House, nor is he the owner of the property where Weldon House is located, (*see* Defs.' SMF ¶¶ 2-3, Dkt. No. 26, Attach. 2)—indicates that Handel requested that Byrne & Storm represent him "with respect to reviewing and rendering advice with respect to the underlying facts and documentation involving [his] attempts to obtain and operate a motocross facility on" the Weldon House property. (Dkt. No. 1, Attach. 1 at 1.)[2] Under the agreement, Byrne, "the primary attorney responsible for the file," billed his time at a rate of $350 per hour. (*Id.* at 1; *see* Pl.'s SMF ¶ 3.) The letter of engagement also provides that a monthly interest rate of 1.5% would be added to bills not timely paid, and Byrne & Storm would be entitled to recover attorney's fees associated with any collection efforts. (*See* Pl.'s SMF ¶ 4.) "[T]he parties agreed that [Byrne & Storm] would receive a $5,000[] retainer at the outset of the representation," which was later paid

---

[2] Weldon House is a New York corporation with a place of business in East Durham, New York. (*Compare* Compl. ¶ 4, *with* Dkt. No. 7 ¶ 1.)

by a check drawn from a Weldon House bank account and signed by Handel's wife and principal/owner of Weldon House, Patricia Handel. (Pl.'s SMF ¶ 5; *see id.* ¶¶ 6, 8.) Once the retainer was paid, Handel told Byrne that Patricia Handel "was to be the principal contact." (*Id.* ¶ 7.)

In June 2010, Byrne drafted a second letter, this time addressing it to both Handel and Weldon House. (*See* Dkt. No. 1, Attach. 2.) The second letter, which referenced the September 2009 letter, reduced the hourly billable rate to $300 per hour effective June 1, 2010, but, otherwise, left in place the terms of the September 2009 letter of engagement. (*See id.* at 1.) The June 2010 letter was signed by Handel and Patricia Handel. (*See id.* at 2.)

Byrne & Storm performed legal services related to the Weldon House property; specifically, it appeared as co-counsel in a state court action, and sent bills to the Handel residence, none of which were returned as undeliverable. (*See* Pl.'s SMF ¶¶ 10, 11, 14-15.) In July 2010, the motocross litigation settled "on basically the terms that [d]efendants had initially wanted." (*Id.* ¶ 17.) Defendants made several partial payments to Byrne & Storm after paying the initial retainer of $5,000 in September 2009, including an additional $5,000 in February 2010, $2,500 in May

4

2010, $16,395 in July 2010, $5,000 in November 2010, and $5,000 in February 2011.  (*See id.* ¶ 19; Dkt. No. 19, Attach. 3 at 36.)

## B.    Procedural History

Byrne & Storm commenced this action in April 2012, alleging that it was owed an outstanding balance of $261,929.66 plus interest as set forth above.  (*See* Compl.)  Defendants answered, asserted several affirmative defenses, and asserted five counterclaims.  (*See* Dkt. No. 7.)  Those counterclaims are for: "fraud and overbilling"; legal malpractice; res ipsa loquitur; breach of fiduciary duty; and breach of contract.  (*Id.* ¶¶ 19-28.)[3]  Despite a June 2013 discovery deadline, (*see* Dkt. No. 18), Byrne & Storm moved for summary judgment in January 2013, (*see* Dkt. No. 19), and, in March 2013, defendants cross-moved as outlined above, (*see* Dkt. No. 26).

### III.  Standard of Review

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here.  For a full discussion of the

---

[3] Defendants have withdrawn their affirmative defenses of lack of privity of contract and lack of subject matter jurisdiction, and have similarly withdrawn their counterclaim of res ipsa loquitur.  (*See* Dkt. No. 26, Attach. 3 at 7, 14.)

standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011).

## IV. Discussion[4]

Byrne & Storm argues that it is entitled to judgment as to its claim of account stated because it has shown a prima facie case, and defendants have failed to raise a "legally sufficient objection" in their answer. (*See* Dkt. No. 19, Attach 7 at 4-7.) As for its breach of contract claim, Byrne & Storm makes the same assertion. (*See id.* at 7-11.) As a threshold issue, defendants argue that, given the extremely limited discovery to date, Byrne & Storm's motion is premature and should be denied pursuant to Fed. R. Civ. P. 56(d). (*See* Dkt. No. 26, Attach. 1 at 2-3.) To this Byrne & Storm responds that: because defendants identify no specific facts that would demonstrate the existence of a triable issue, the motion is not premature for want of discovery; defendants' failure to object to the several bills they

---

[4] While neither party specifically addresses the question of what substantive law the court should apply in this diversity action, both implicitly rely on New York law as evidenced by their citation to decisions primarily from the courts of that state and their reference to the decisions of federal courts applying New York law. (*See, e.g.*, Dkt. No. 19, Attach. 7 at ii-iv; Dkt. No. 26, Attach. 1 at ii.) In light of the foregoing, the court applies New York law. *See Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 98 (2d Cir. 2000).

6

received precludes them from arguing now that they were overbilled; and, if the court finds the motion premature, Byrne & Storm asks for a continuance as opposed to outright denial of its motion.  (*See* Dkt. No. 29, Attach. 1 at 1-3.)

Defendants contend next that summary judgment is inappropriate as to Byrne & Storm's claim of account stated because there is proof of "mistake or fraud" as alleged in the affidavits of Handel and Patricia Handel.  (Dkt. No. 26, Attach. 1 at 3-4.)  Byrne & Storm's breach of contract claim is infirm, argues defendants, because they were overbilled—which also supports their counterclaims for breach of contract and breach of fiduciary duty—and Byrne & Storm committed legal malpractice when Byrne told defendants "that he was going to be successful in his counter-suits and was so confident in his ability to win [them] that he told [defendants] not even to pay attention to the legal bill because it was irrelevant as he was going to recover that money in the counter-suits."  (*Id.* at 4-6.)  While they also recognize that they may have "waived [the] portion of their malpractice claim [that related to their reliance on Byrne's alleged representations] by settling the [underlying] lawsuit," defendants contend, without any supporting authority, that overbilling or

7

fraudulently billing them "in and of itself would constitute an act of legal malpractice." (*Id.* at 6.)  Finally, in support of their partial summary judgment motion, defendants assert that all claims against Handel should be dismissed because "[i]t was not the intent of either [Byrne & Storm] or the defendant to bind . . . Handel personally or as guarantor on behalf of the Weldon House." (*Id.* at 6.)

### A.  Account Stated

"An account stated is an agreement between parties to an account based upon prior transactions between them with respect to the correctness of the account items and balance due." *Citibank (S.D.), N.A. v. Brown-Serulovic*, 97 A.D.3d 522, 523 (2d Dep't 2012) (internal quotation marks and citations omitted).  Such "'[a]n agreement may be implied where a defendant retains bills without objecting to them within a reasonable period of time, or makes partial payment on the account.'" *Id.* (quoting *Am. Express Centurion Bank v. Cutler*, 81 A.D.3d 761, 762 (2d Dep't 2011)).  An account stated "is not conclusive upon either party, but is simply *prima facie* presumptively correct, and may be impeached for any error induced by fraud or mistake." *Samson v. Freedman*, 7 N.E. 419, 421 (N.Y. 1886).  Thus, while such a claim may be attacked by the defendant for fraud,

8

mistake, or error, *see Lockwood v. Thorne*, 11 N.Y. 170, 170 (1854), "'bald conclusory allegations of fraud, mistake, and other equitable considerations are insufficient to defeat a motion for summary judgment' on an account stated," *Cohen Tauber Spievak & Wagner, LLP v. Alnwick*, 33 A.D.3d 562, 562 (1st Dep't 2006) (quoting *Liddle, O'Connor, Finkelstein & Robinson v. Koppelman*, 215 A.D.2d 204 (1st Dep't 1995)).

Here, Byrne & Storm has shown a prima facie case of account stated. *See Morrison Cohen Singer & Weinstein, LLP v. Waters*, 13 A.D.3d 51, 52 (1st Dep't 2004). At a minimum, that showing is supported by defendants' partial payments on the account. (*See* Pl.'s SMF ¶ 19.) To avoid summary judgment, defendants must show, by more than speculation or conjecture, that the account—totaling nearly $262,000—is erroneous because of mistake or fraud. *See Cohen*, 33 A.D.3d at 562. Defendants attempt to make such a showing by claiming that Byrne overbilled them, with a specific example related to his participation in certain depositions, and that their failure to timely object to the account was a result of their heeding Byrne's assurances and following his advice to ignore the growing bills. (*See* Dkt. No. 26, Attach. 3 at 3-4, 10, 12-14.) While these conclusory assertions, which are disputed by Byrne, (*see* Dkt.

9

No. 19, Attach. 2 ¶¶ 30, 34, 36), do not suffice to defeat summary judgment for a prima face claim of account stated, the court agrees that, given the limited discovery to date, Byrne & Storm's motion is premature on this claim and defendants should be allowed further discovery. Defendants are in an untenable position of having to make a significant showing of fraud or mistake when the information that would shed light on that inquiry is in possession of Byrne & Storm.[5]  Accordingly, the motion is denied, with leave to renew, to allow for further discovery.  *See* Fed. R. Civ. P. 56(d).[6]

### B. Breach of Contract

Under New York law, "[t]he elements of a cause of action for breach of contract are (1) formation of a contract between plaintiff and defendant; (2) performance by plaintiff; (3) defendant's failure to perform; and (4) resulting damage." *Clearmont Prop., LLC v. Eisner*, 58 A.D.3d 1052, 1055 (3d Dep't 2009) (internal quotation marks and citation omitted).  As

---

[5] The court also appreciates that former Byrne & Storm attorney Jacob Studenroth, who performed work that was billed to defendants, is no longer an employee of the firm.  (See Dkt. No. 29 ¶ 4.)  Studenroth, however, may also possess relevant information.

[6] Any ensuing discovery-related matters are to be raised with Magistrate Judge Treece.

relevant to defendants' affirmative defenses of overbilling, (*see* Dkt. No. 7 ¶¶ 15-16), where the contract at issue is one between attorney and client, "[o]verbilling and padding of costs can constitute a breach of contract" on the part of the attorney.  *O'Connor v. Blodnick, Abramowitz & Blodnick*, 295 A.D.2d 586, 587 (2d Dep't 2002); *see Nason v. Fisher*, 36 A.D.3d 486, 487 (1st Dep't 2007).

Here, there is no dispute that the parties entered into a contract, Byrne & Storm rendered legal services, and defendants have failed to pay the outstanding balance of the bill for those services.  (*See* Dkt. No. 1, Attachs. 1, 2; Pl.'s SMF ¶ 21.)  The unresolved issue is whether the bill accurately reflects the work performed by Byrne & Storm on defendants' behalf.  Therefore, Byrne & Storm's claim—and defendants' counterclaim, as explained below—turn on whether defendants were overbilled by Byrne & Storm.  For the same reasons as above, summary judgment is premature and further discovery is warranted.

**C.    Counterclaims**

Defendants' counterclaims of fraud and overbilling, breach of fiduciary duty, and breach of contract all rely on the single factual allegation that Byrne & Storm inaccurately billed them for legal services.

(*See* Dkt. No. 7 ¶¶ 19-20, 27-28.[7])  As explained above, defendants have not yet had the opportunity for discovery on that issue, which gives the court reason to deny Byrne & Storm's motion with leave to renew.[8]

The remaining counterclaim, for legal malpractice, requires further analysis.  That counterclaim is premised on defendants' assertion that: (1) assurances were made by Byrne regarding the likely success of defendants' counter suit in the underlying state court action, which caused defendants to continue with Byrne & Storm as counsel when they otherwise would not have, given the considerable bills being generated by the firm; and (2) Byrne & Storm overbilled or "churn[ed] the file," which was by itself legal malpractice.  (*Id.* ¶ 25; *see id.* ¶¶ 21-25.)  As explained below, Byrne & Storm is entitled to judgment on defendants' legal malpractice counterclaim.

"To state a cause of action to recover damages for legal malpractice,

---

[7] The court notes that two paragraphs in defendants' Answer are numbered twenty-eight.  (*See generally* Dkt. No. 7 at 5-6.)

[8] Notably, these counterclaims may be but different theories of a single claim of relief, which could, at most, result in one recovery.  *See Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2d Cir. 1995) ("A [party] seeking compensation for the same injury under different legal theories is of course only entitled on one recovery.")
12

a [client] must allege: (1) that the attorney failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession, and (2) that the attorney's breach of the duty proximately caused the [client] actual and ascertainable damages." *Keness v. Feldman, Kramer & Monaco, P.C.*, 105 A.D.3d 812 (2d Dep't 2013) (internal quotations marks and citation omitted).  The attorney's negligence must be the "but for" cause of any damage to the client.  *M & R Ginsburg, LLC v. Segal, Goldman, Mazzotta & Siegel, P.C.*, 90 A.D.3d 1208, 1209 (3d Dep't 2011).  As relevant here, "[a] claim for legal malpractice is viable, despite settlement of the underlying action, if it is alleged that settlement of the action was effectively compelled by the mistakes of counsel." *Keness*, 105 A.D.3d at 812 (internal quotation marks and citation omitted).

Here, the viability of a claim of negligence on the part of Byrne & Storm regarding Byrne's assurances about a counter suit was extinguished by defendants' settlement of the underlying action.  (*See* Pl.'s SMF ¶ 17.) Indeed, defendants make no allegation that the settlement was compelled by Byrne's negligence nor do they take issue with the resolution of their litigation "on basically the terms that [they] had initially wanted."  (*Id.*)  As such, defendants cannot demonstrate that their claimed damages with

13

respect to the first factual allegation—an obligation to pay the bill that Byrne told them would be covered by the fruits of "counter suits"—were proximately caused by Byrne. (Dkt. No. 7 ¶ 23; *see id.* ¶¶ 21-24.) Turning to the second factual assertion in support of their legal malpractice counterclaim, (*see id.* ¶ 25), defendants have provided no support for the proposition that overbilling by itself "constitute[s] an act of legal malpractice," (Dkt. No. 26, Attach. 1 at 6), and the court is aware of none. In any event, defendants' remaining counterclaims sufficiently cover the common allegation of overbilling. Accordingly, Byrne & Storm is entitled to judgment on defendants' counterclaim of legal malpractice.

### D.  **Defendants' Cross Motion**

Finally, the court denies defendants' cross motion for partial summary judgment. (*See* Dkt. No. 26.) As shown by the September 2009 and June 2010 letters, it is unclear whether Handel signed in his individual capacity or on behalf of Weldon House. (*See* Dkt. No. 1, Attachs. 1, 2.) In particular, the first letter references Handel's "request[] that [Byrne & Storm] represent [him] with respect to . . . [his] attempts to obtain and operate a motocross facility on the [Weldon House] property," is signed only by him without any agent designation, and is addressed only to him.

14

(Dkt. No. 1, Attach. 1.) The second letter, which is addressed to both Handel and Weldon House, includes

> "Agreed to:
> Weldon House, Inc.
> By:"

with two signature lines following it that were apparently executed by Patricia Handel and Handel; it also contains language "that all of us shall be bound by the terms of the Letter." (Dkt. No. 1, Attach. 2.) Moreover, Handel's assertion that "neither [he] nor Mr. Byrne intended to bind [him] personally to the retainer agreements," (Dkt. No. 26, Attach. 3 at 9), is disputed by Byrne, who contends that he "always intended for both . . . Handel and . . . Weldon House to be bound by the terms of the retainer agreement and letter agreement," (Dkt. No. 29 ¶ 2(vi)). These obvious issues of fact preclude summary judgment. *Cf. Klapper v. Integrated Agric. Mgmt. Co.*, 149 A.D.2d 765, 766-67 (3d Dep't 1989).

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Byrne & Storm's motion for summary judgment (Dkt. No. 19) is **GRANTED IN PART** and **DENIED IN PART** as follows:

   **GRANTED** as to defendants' counterclaim of legal malpractice,

15

which counterclaim is **DISMISSED**; and

**DENIED** in all other respects with leave to renew; and it is further

**ORDERED** that defendants' cross motion for partial summary judgment (Dkt. No. 26) is **DENIED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

June 5, 2013
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court